D. M. Osborne & Co., Appellants, v. C. L. Graham *et ux.*, Respondents.

·Kansas City Court of Appeals, May 25, 1891.

1. **Married Women**: PLEADING: LIEN ON PRODUCTS OF SEPARATE ESTATE. The separate property of a married woman, when it is sought to charge it with a lien under the statute, must be described in the petition, and, the separate estate being an indispensable element of the proceedings, must exist when the contract is made out of which the liability arises, and its existence must continue to the institution of the suit, and a petition failing to show these essential facts is fatally defective.

2. ———: LIEN ON PRODUCTS OF SEPARATE REALTY: PRACTICE: RECEIVER OR INJUNCTION. In order to continue the *res* so that the same may be subject to a lien, the creditor may invoke the appointment of a receiver or the aid of an injunction.

3. ———: SALE: DEBT OF HUSBAND: LIEN ON PRODUCTS OF WIFE'S REALTY: MATERIALS FOR ITS CULTIVATION. A review of the evidence in this case shows the debt sought to be charged as a lien on the products of the realty to be the sole debt of the husband, and that the materials—a reaper, a binder and a mower—were not principally purchased for the cultivation of the wife's real estate, though incidentally used thereon, and such secondary use is not sufficient to charge the products of her real estate.

4. ———: LIEN ON PRODUCTS OF WIFE'S REALTY: NECESSARY MATERIALS: EXPENSE. Materials furnished for the cultivation of the wife's real estate, to bind her separate estate in the annual products thereof, should be for necessary materials and of a kind and quality not necessarily expensive.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Geo. Robertson,* for appellant.

(1) The products of the wife's lands may be levied upon for a debt made by the husband for the

cultivation of such lands. R. S. 1889, sec. 6868; R. S. 1879, sec. 3295. ( 2 ) Cultivation includes reaping and sowing crops. See the terms agriculture and cultivation, Anderson's Dictionary of Law. ( 3 ) The proper proceeding was a suit against the wife to subject the products of her lands to payment of this debt. *State to use v. Armstrong*, 25 Mo. App. 532; *Gabriel v. Mullin*, 30 Mo. App. 464; *Bedsworth v. Bowman*, 31 Mo. App. 116.

No brief for respondent.

SMITH, P. J.—This suit was brought in the circuit court of Audrain county by the plaintiff to have the amount of two judgments declared a lien and charge upon " the crop of oats, hay, corn and other crops upon the lands " of the defendant, M. J. Graham, a married woman, and the wife of the other defendant. The petition alleged that on the ninth of July, 1884, plaintiff was a corporation, and that the defendants, husband and wife, were residing and engaged in farming on one hundred and sixty acres of land in Audrain county belonging to the wife; and that on the said date defendant, C. L. Graham, bought of plaintiff one Osborne reaper and binder and one mower for $250, and executed his two promissory notes therefor, each for $125, one of which was made payable on September 1, 1884, and the other on January 1, 1886; that neither of said notes being paid at maturity the same were put in judgment; that one of said judgments was entitled to a credit of $70; that said machinery was bought for the use, cultivation and improvement of the said farm and was so used by defendants thereon; that "defendants have now upon said land crops consisting of oats, hay, corn and other crops," of the value of $500; that defendant, C. L. Graham, is, and has been, insolvent at all times since the rendition of said judgment. Judgment was prayed that a lien on said crops be declared

for the amount of said judgment debt. The answer admitted the defendants were husband and wife; the purchase of the machinery and execution of the notes by defendant, C. L. Graham, and put in issue the truth of the other allegations of the petition.

The bill of exceptions shows that the evidence adduced at the trial was in substance, "that Margaret J. Graham is now, and at all dates, as in the petition set forth, was the owner of a farm of one hundred and eighty acres of land in Audrain county, Missouri and that said husband and wife lived thereon, and that it was inherited from her father." C. M. Dyson, being called upon the part of the plaintiff, testified as follows: "I knew defendants in the year 1884, and when defendant, C. L. Graham, bought the binder and mower, I was living at their house at the time. Graham had in that year on his wife's farm thirty-five or forty acres in oats and fifteen acres in meadow. He used this Osborne binder to cut and bind those oats and the mower to cut the grass with. He tended and cultivated the farm that year and did before and has since, except parts that have been rented out to farmers of the neighborhood. Before he cut the oats on his wife's farm he had used the binder in cutting some wheat for Gideon Mallory, some oats for Mrs. Duly and some wheat for John Meyers. He cut about eight acres of wheat for Mallory, ten or fifteen acres for Mrs. Duly and a like amount for Meyers. When Mr. Graham bought the machine he brought it and set it up at Mallory's. He used the mower only on his wife's place." Jefferson D. Sims testified that he did defendant Graham's threshing the year of 1884 and that the oats had been bound by a binding machine with twine. G. L. Ferris testified on the part of plaintiff that he was the agent of D. M. Osborne & Co., the year 1884, for the sale of binders, reapers and mowers, and that in the year 1884 he sold and delivered to defendant, C. L. Graham, a binding machine which both reaps and binds the grain, and also

a mower for the sum of $250; that the price of the binder was $210, and the mower was $40; that Graham gave him two promissory notes for the machinery payable to plaintiff: One for $125, due September 1, 1884, the other one for $125, due January 1, 1886; that he supposed when he sold said machinery to Graham that he was solvent and that he was the owner of the farm he lived on, and Graham told him he wanted to use it on that farm and may have told him he wanted to cut for his neighbors, too; that at that time and now all farmers in Audrain county use machinery of that character to harvest their grain with; that sometimes two or three farmers will club together and buy such machinery, and sometimes one man will buy it and cut for his neighbors; but that such machinery is common and in general use by all the farmers of the county. "Farmers raising a small quantity of grain could not afford to buy such machinery, but could better afford to hire it cut. It depends upon what quantity of grain a man raises and his circumstances, whether he can afford to own such machinery. When I sold Mr. Graham the machinery I took his individual notes without any security and looked to him for the payment; I then thought he was solvent. As these two notes became due plaintiff brought suit against C. L. Graham and obtained judgment against him on both notes. Under that judgment execution was issued and was levied on the machinery, which was sold under it, and since that time this suit was brought against Mrs. Graham." It was shown by plaintiff that said debt was entitled to a credit of $70 paid by said husband, C. L. Graham, and that he was insolvent in 1884, and now that both notes have been put into judgment against the husband, C. L. Graham, before the commencement of this suit; that the said machinery was sold under a judgment and execution of plaintiff against C. L. Graham after it had been used by him only one year, and that sale is what produced the above credit leaving the balance of the judgment unpaid.

The defendants, to sustain the issues upon their part, called Jefferson Powell who testified, that at the time Graham bought said binder and mower of plaintiff's agent he was present and heard Graham, the husband, say to the agent Ferris, "I want the payments so arranged that I can collect up the money I make in cutting out with this machinery to pay these notes, as that is the way I expect to make the money to pay for the machinery." And further, on cross-examination, he testified, that he also bought a binder from the same agent the same year that Graham did, and that he afterwards exchanged it, the same year, for a combined reaper and mower, and that he owned and cultivated a farm of one hundred and twenty acres in Audrain county. On redirect examination he further testified that he owned other lands and property in said county, he cultivated all of his farm and raised a large quantity of hay and oats; as a rule, farmers do not own a combined reaper and mower. This is a stock country and a great deal of grass, and corn is raised. Farmers raising only thirty or forty acres of oats, and fifteen to twenty acres of grass, cannot afford to own such expensive machinery, and it is cheaper for farmers to hire oats and grain of that quantity cut. They can have oats cut and bound at fifty cents per acre. Margaret J. Graham, being sworn, said, she was a defendant and was the wife of C. L. Graham ; that her husband tended and cultivated her farm, except such parts as she had rented out to neighboring farmers, and that she and her husband kept their business separate and kept separate accounts ; that the farm consisted of one hundred and eighty acres, forty of which was in pasture at the time this machinery was bought and is now, and the balance is in cultivating lands and meadow; that he raised oats and grain every year on her farm for the use of the family ; that she and her husband kept their business separate and kept separate accounts and owned separate stock and property ; that in 1884, when this machinery

was bought, she had all her farm rented out in her own name, except thirty-five or forty acres in oats and fifteen to eighteen acres in meadow and small pasture; that she rented out every year the larger part of her farm; that she never raised more than thirty or forty acres of oats and fifteen to eighteen acres of meadow in any year; that she never raised sufficient grain and meadow on her farm at any time to justify the purchase of a reaper or mower. A. C. Marshall testified on the part of the defendants, that one J. C. Huff was, in the year 1884, the partner of G. L. Ferris in the business of selling reapers and mowers, and that he heard Huff say to one Wilcox, in July, 1884, that he had just sold C. L. Graham a reaper and mower, and that "he is to give his notes for it and we are to wait until he cuts his grain with it and makes money enough to pay for it;" that Graham had bought it to cut grain for hire and expected to pay for it in that way. Here the defendants closed, and the cause being submitted to the court it found for the defendants and rendered a judgment in their favor for costs, dismissing the bill for plaintiff. Plaintiffs appeal.

I. The petition of the plaintiff is assailed on the ground that it does not state facts sufficient to entitle the plaintiff to the relief that it has in its petition demanded. This is, it is perceived, a proceeding to subject the statutory separate property of the wife to a lien of a debt contracted by the husband. The statute, Revised Statutes, section 3295, provides that, "the rents, issues and products of the real estate of a married woman * * * during coverture shall be exempt from attachment or levy of execution for the sole debts of her husband; * * * provided such annual products may be attached or levied upon for any debt or liability of her husband, created for necessaries for the wife and family, and for debts for labor or materials furnished, upon or for the cultivation or improvement of such real estate." Does the petition state the facts necessary to authorize

the court to adjudge a lien in favor of the plaintiff against the products of the wife's real estate? The petition fails to allege that the wife, at the time the debt was contracted by the husband, had or owned any crops, the product of her real estate, which were liable to be levied upon for such debt. It shows only that at the time of the rendition of the judgment on the notes of the husband, given for the debt, that the husband and wife had on her real estate crops of oats, hay, corn and other crops. There is no allegation that the wife alone at the time of the contracting of the debt or subsequently thereto had or owned any specific annual products of her real estate. There is no allegation even showing that the wife alone had any annual product of her estate at the time of the rendition of the judgment against the husband, which continued to exist until the institution of the suit. The annual crops of the wife in existence in 1884, when the debt was contracted, or in 1886 when the judgment was rendered, are not alleged to have been in existence when the suit was commenced. There is presumably nothing upon which the decree, if made, could operate. Upon what particular and specific separate property of the wife is it sought to establish a lien? Where situate and in what does it consist? The petition does not answer these questions. If the court should make the decree which plaintiff demands, and a special *fieri facias* was awarded thereon, could it be executed by the officer to whom directed? It would be so vague and uncertain as to be incapable of enforcement. The property under the description could not be identified if in existence.

Hence it is, that it has been judicially determined, that the separate property sought to be charged must be described in the petition, and the separate estate being an indispensable element of the proceeding, it must exist when the contract is made, out of which the liability arises; and its existence must continue to the institution of the suit. If, when the contract is made,

the estate does not exist, the liability cannot arise, and if exhausted, or from any cause ceases to exist before the institution of the suit, there could be no foundation for the judgment. *Gabriel v. Miller*, 30 Mo. App. 464; *Peppir v. Jones*, 52 Ala. 161; *Reorsiers v. Stoddard*, 32 Ala. 599; *Arnold v. Brockenborough*, 29 Mo. 625.

It is suggested that the requirements of these rules frustrate and defeat the purpose of the statute; that they render it impossible for a creditor of the husband to avail himself of the benefits of the statute in securing a lien upon, and satisfying his debt out of, the product of the wife's real estate. We answer this objection by stating that, in cases of this kind when it is sought to subject the annual product of the wife's real estate to a lien for a debt of the husband under the proviso of section 3295, Revised Statutes, that it would be a proper practice for the creditor in order to continue the existence of the *res*, so that the same may be subjected to a lien for his debt, to invoke in his petition for the lien either the appointment of a receiver, or the aid of the injunctive process of the court. In this way a proceeding like the one here attempted could be made effectual. We, therefore, are of the opinion that the plaintiff's petition is subject to the objection that has been lodged against it.

II. An examination of the evidence has not convinced our mind that the plaintiff is entitled to the relief which he seeks. If the plaintiff's debt was the sole debt of the husband, then the product of the wife's real estate was, under the statute, exempt from levy of execution against the husband therefor. If however the debt was created for materials furnished upon, or for the cultivation of, the real estate of the wife, then the annual products of her real estate are liable for such debt. Was the debt in this case the sole debt of the husband? The evidence is somewhat conflicting, but we think that by a great preponderance it supports the conclusion that it was the sole debt of the husband.

The machinery was sold to the husband on credit. The time of payment was fixed, as was admitted by plaintiff's agent who made the sale, far enough off to enable the husband to cut grain enough for others with the machinery for hire to pay for it. It further appears that at the time the plaintiff's agent sold the machinery to the husband that he told the agent that " I want the payments so arranged that I can collect up the money I make, in cutting out with this machinery, to pay these notes, as that is the way I expect to make the money to pay for the machinery." The wife only cultivated, it seems, a small portion of her real estate, renting the most of it out to others. Suit was brought and judgment obtained against the husband alone on the notes, and the machinery levied upon and sold as his individual property. These facts and circumstances all tend to show that the purchase of the machinery was a venture of the husband alone, and not as the agent in law of his wife. It looks very much like the idea was an afterthought of the plaintiff that this debt was created for materials furnished for the cultivation of the wife's real estate. If farm machinery is comprehended by the descriptive term "materials," it does not sufficiently appear by the evidence that such materials were furnished by plaintiff for the cultivation of the wife's land, the mere fact that the husband incidentally used the machinery on a small part of his wife's land does not prove that it was furnished for the cultivation of the wife's real estate, any more than if the husband had purchased an expensive steam threshing machine and used it in threshing the few acres of oats raised by the wife on her farm. The evidence, we think, shows the machinery was not primarily purchased or furnished for the cultivation of the wife's real estate. The use on the farm was a mere incident, secondary. We should suppose that a debt created for materials furnished for the cultivation of the wife's real

estate, to bind her separate estate in the annual products thereof, should be for necessary materials. We hardly think that if the husband buy any unnecessary and expensive farm machinery that he may choose, that the statute would make the debt created therefor a lien on the annual products of the wife's land, even if such machine should be incidentally used thereon. The lines of limitation on the binding power of the husband, in creating debts chargeable against the products of the wife's land, must be drawn somewhere. In creating debts for materials furnished for the cultivation of the wife's real estate, such materials ought to be necessary and of a kind or quality not unnecessarily expensive. The evidence, like the petition, fails to show the existence, at the time of the creation of the debt or the bringing of the suit, of any annual products of the wife's real estate, which the court could lay hold of and subject to a lien. We cannot discover that the plaintiff was entitled to any relief either upon the facts alleged in his petition or the evidence preserved in the bill of exceptions, so the judgment of the circuit court dismissing the plaintiff's petition will be affirmed. All concur.